Good morning, your honors. Andrew Parnes appearing on behalf of Mr. Khong, appellant. May it please the court. There is a lot of agreement between the parties on the standards that should apply in this case and what the court needs to look at. In this matter, we're looking at a failure of counsel in pretrial proceedings and negotiations in providing the plea information, the correct advice regarding the case. Over 90% of cases, the criminal cases, settle before trial. So it's clearly an important part in a critical stage of the proceeding. And the case law is looked at and said basically the attorney has a responsibility to transmit the offers to provide correct information about what's been offered and what the effects would be, and also correct advice about the status of the case. Is it a strong case? Is it a weak case? And provide advice to the client and to the defendant as to exactly what's facing him should he go to trial or reject the plea. In this case, the district court found that there was deficient performance in the fact that the trial attorney did not provide the proper advice about the plea and about what the defendant would be facing had he, did he reject the plea and go to trial in this case. The judge said that the attorney violated his obligation, but there was no prejudice. Right. And that's the key issue here, isn't it? I believe so. Although I think the government probably contends that none of the attorney was competent also. Right. The government contends that. But I think that the district court clearly rejected that, and I would ask this court to affirm that. The question in prejudice in what the district judge looked at was a combination of certain things. He looked at a couple of facts. The first one that he looked at was that he said Mr. Kong believed that the evidence against him was weak. And, but that was based solely on what the attorney's advice was about the charges. In this case, the government certainly believed, and I quoted from some of their briefs, that they, it was a strong and multifaceted case. It was a case where And I think that's one of the factors that this court has to look at on the record. Was this a weak case? What's our standard of review? Is it clearly erroneous on the judge's finding of a weak case? No, I think that's a question of, that is a mixed question of law and fact. And that basically what he's looking at is that's part of the decision regarding, that he made regarding whether it was reasonably probable that a new, that Mr. Kong would have taken the deal had he been properly advised. And that is the ultimate issue in the case, and that's a mixed question of law and fact. And so the court can look at the record, which are the facts in the case, to determine whether or not it's a strong or weak case. I think the judge's determination of that is really a legal finding on his part. And I think it's an incorrect legal finding. I mean, this was a case where there were wire taps. It was a case with a DEA agent going undercover. It was a case where there were actual drug, drugs found in Mr. Kong's possession. It was a case that he had pled to in state court prior to that, prior to this trial in, on the possession of the methamphetamine that was found in his car. So this was a very strong case that he was facing. And in fact, what the, what I think where the court gets, the district court got it wrong was that it said, well, it was certainly a strong case on the possession with the intent to deliver charge, and so the sentence would be affected by what happened in the conspiracy. But that's not legally right. He could have been acquitted of the conspiracy and still had under the guidelines of possession. So if there was a pre-guidelines case at the time of the negotiations, pre-Booker, excuse me, I'm sorry, pre-Booker, I misspoke, pre-Booker case, and so controlled by the guidelines at the time of the negotiations. So whether or not the sentence had been under the guidelines of possession. Well, if it had, if there had been a possession and the, and the, and the relevant conduct included the conspiracy, even if it had been acquitted, it would have been the same. It would have been a level 38. What was his sentence, 14 years? He wound up with a 170-month sentence, a little over 14 years. Now, what was the offer? The offer was to plead to a level 34 with three units for acceptance of responsibility and a potential safety valve two unit down. So the range would have been as low as 87 months or up to 120 months, the 10-year minimum mandatory. And, you know, there's no, what kind of relief can he get at this point? Well, suppose we agree with you that his consul who collected, I think, what was it, $170,000? I think that's approximately right. Now, if we say consul not only was incompetent, but seriously prejudiced this individual, I think the individual, isn't he, was he a native-born American? I know he's an Asian. He is a native. Okay. Well, what kind of relief can we give you? We have to send it back to district court. Right. And I think that the parties agreed in the trial court, and the district judge asked that, and both Mr. Glang representing the government, and we said that the proper remedy is to go back to district court to offer the plea that he would accept the plea as offered and then be sentenced. If he complied with the requirements of safety valve, he would get a ---- But, you know, part of it is time has gone. The cooperation, this is all gone now. Those people that he could have ratted on, that was a long time ago. Well, we're not arguing about the issue of ratting on in 5K1. We're only talking about whether he ---- It would be 10 years without that. It would be 10 years without that, and the difference would be ---- 14, so he would get 40 years cut from the sentence. Right. And if he cooperated under the safety valve, which doesn't require testimony, but just to tell all you know about it, and that would, that conceivably could get 87 months. What we're talking about is a reduction from 14 years to 10 years, and maybe less. And maybe less. Absolutely right. And we, and the parties ---- Judge Brey says it's a little late for the government to get that information. I mean, I would think they would have a good argument that it's too late for the safety valve. He had said after the conviction that he wasn't interested in the safety valve, in telling what he knew even after that. But that's something that the district court could worry about if we ever got to that stage. But it would at least cut it to 10, and you would have an argument, I suppose, that it would cut it more, and the government would have a pretty good argument that it shouldn't. But that's not our problem. Right. And we would agree with that. We're basically saying, and we're not asking for a new trial. We don't think that's the proper remedy. The proper remedy is to go back and to, and simply do that. So we're arguing really that the case is about whether he gets a few years off the sentence, which is of some significance to him, I understand. And it's a very large percentage in this case, and four years is significant, and it could be less. And certainly that doesn't make a difference. So the question is, the basic question is, would he have likely taken the offer if he had known the facts? Right. And I think the court has to look at both what the attorney told him about the case and about the sentencing. And, in fact, what the ---- He wasn't very much off on the sentencing, was he? No, he wasn't off on the sentencing. But I think that the reason for that is because of the Booker decision. And the initial guidelines pre-sentence report recommendation was 235 months. And the advice from the attorney, because he believed that he was a criminal history, too, he actually would have been up at 262 months at the time. But what he predicted, I think what Mr. Fersman predicted can't be looked at retrospectively as to what happened, because what happened was a result of a situation with, after Booker, new attorneys coming in. There was statements made by Mr. Fersman. I guess that's why the district judge said the advice was not accurate, but he wasn't prejudiced. Right. But I think that's where there's a legal mistake made, too, because the district judge was looking at the sentence that he actually received rather than the advice that was given. The mistake was made prior to trial, when the range of sentences really were as low as 87 months or 10 years, and up to 20 years or more than 20 years, 22 years. And Mr. Kong never knew that. And so had he known that, I think there's a reasonable probability that he would have made that decision to take that deal. He testified straightforwardly that I think that when he was told it was only going to be 14 or 15 years, that he would take that risk. But he didn't know what the true risks were. He didn't know. He wasn't fully advised. And that's what the error is. I got some impression of reading the briefs that the lawyer encouraged him to defend his case on the grounds that he had a really good shot at being acquitted. I think that's – And this is not a fact that there practically was no defense put in at the trial? Yes, there was no – the only defense that was put in was one expert witness. Which cost $16,000 and was of questionable validity. I would absolutely agree with you. Because I've seen a lot of drug cases on appeal, and most of the drug cases are slam dunks. The defense rarely, if they get a deal, is going to try the case. There are very few acquittals in my experience. And most of the other defendants in this case did settle. I'll give it to you. Well, one other. Well, why did the judge say that it was a weak case? You know, I'm not sure why. I mean, I don't – I think that the only – there was some argument maybe that the – that Mr. Kahn didn't have – I mean, what the attorney was arguing was that Mr. Kahn didn't have the ability to follow through. But certainly other people did. There was information of an actual pilot that was talked about. I mean, this was a slam dunk. And the district court relied on the Jones case. And in the Jones case, which the lawyer told the client, this is a slam dunk loser. You should take this deal. And the client didn't do it. And so there was no – there was no finding of ineffective assistance to counsel. But in – Was his defense essentially that he never intended to provide the drugs and he was going to, in effect, rip off? Well, that was – that was the defense that – The government – That was the defense of Mr. Fersman that he put forward. Mr. Kahn never testified to that. And the evidence was clear that Mr. Kahn was present in September when there was a transaction made, a hand-to-hand transaction made. He was in the vicinity with Mr. Torres in September. He then participated in a number of recorded conversations face-to-face with the agent, recorded, videotaped, and in which there was discussions about transfer – of ice methamphetamine, very pure methamphetamine. And then in May of the following year, he's found in possession of a small amount, which is a sample, at the time when there are wiretaps saying, basically, I'm going to get a sample and bring it to you. And that's – and he's found with that small amount. So the evidence of the – I don't see it as a weak case. And I don't know. I think that's where the district judge made a legal error in terms of that. There are no other questions. I'll – By the way, are you appointed or – No, I'm retained. Retained. There are no other questions. I'll reserve rebuttal time. Thank you, counsel. Doesn't that – that's not one of those podiums that goes up and down, is it? Unfortunately not. It's an up-to-age circuit. We have one that goes up and down. Excellent. I'm height-impaired, so usually I wear higher heels than I did today. Good morning. Hartley West for the United States. May it please the Court. Because counsel has only addressed the ineffective assistance of counsel claim, I will do the same. Unless, of course, the Court has questions. Now, this Court can dispose of the ineffective assistance claim on prejudice grounds alone because there is no reasonable probability that Mr. Kong would have taken that plea offer. And we know that because to qualify for the safety valve, Mr. Kong would have had to tell all of the information that he had regarding this offense. This wasn't – the officer wasn't – the offer was not dependent on his taking the safety valve, was it? That's correct. It's a two-part argument. First, we know that he wouldn't have taken the safety valve because he wasn't willing to snitch. And second, we know that he would not have taken it if he knew that he had a 10-year mandatory minimum because not even he testified to that. There is no evidence in the record that he would have taken a 10-year sentence had he known the true facts of his guidelines range. What he testified to was that had he known that he was criminal history – that if he had been criminal history Category 2 and faced the criminal history Category 2 guidelines range, he would have taken the 10-year offer. But not even he testified that had he known he faced the 235 to 293, he would have taken that offer. Yeah, but the problem is, as I understand it, his lawyer indicated that if he was found guilty, it would be a much less sentence. Never told him the truth about what he was facing in the guidelines. Listen, this person can't be any different than many others. And if I've ever seen singing defendants, it's in drug cases. Mothers sing against fathers. Fathers sing against mothers. Children tell on their parents. Parents tell on their children. And it seems to me that this defendant is no different than anybody else. If he knew the facts of how much of a big sentence he was facing, I don't think you can rely on saying he would not have considered the safety belt. It seems to me there's a pretty good argument made that the reason he said, I'm not going to snitch on anybody, is because he didn't think he was facing such a big sentence. And his lawyer was indicating to him that he had a very good chance of being acquitted. That may be true in many cases, but what we have on this record here is the defendant's testimony that he was, as he admitted at the evidentiary hearing, he was unwilling to snitch. And snitching is what would have been required to get the safety valve. And he did testify at the evidentiary hearing that if he knew he could have gotten the safety valve, then he would have taken that deal as opposed to the 235 to 293 sentence. But he also said that he was unwilling to switch, to snitch. Of course, now, in hindsight, after he gambled and lost at trial, after he gambled and lost again at sentencing, he would rather go back and try to get that 87 months. But there's no dispute on this record that up until the time of sentencing, he was unwilling to snitch. And that is supported by the fact that he did not even seek the safety valve, even after he acquired current counsel, which was five months prior to sentencing. The fact is that he was going to take a risk and see if he could get off at trial. And when he didn't, he was choosing to take a risk and see what sentence he would get. And when he got 170 months, well above what the court had in its Booker discretion, even to go down to the mandatory minimum, now, for the first time, he's saying counsel was ineffective and I was prejudiced. But he still had the safety valve option available to him prior to sentencing, after he retained new counsel. And, in fact, I think it's interesting to note for the record that he filed his habeas petition on the same day he was sentenced. He had it ready to go, and as soon as he was sentenced, he got 170 months, then he argued ineffective assistance. And then he said, oh, I would have taken safety valve. So, but the record shows that he was unwilling to snitch, so he wasn't going to take the safety valve. And, yes, he could have had the opportunity, if he wasn't willing to snitch, to go down to the mandatory minimum, but not even he has said in his declaration or in his testimony. And so, therefore, there is no evidence in the record that he would have taken that 10-year offer, had he been reasonably informed as to the guideline range that he, in fact, did face. I would like to point out to you, I think one of the obligations of an effective counsel, particularly in a criminal case, because, as you know, there are very, very few that go to a trial, and those that do, it's because there's no way to reduce a very heavy sentence. And it seems to me that part of the obligation of the counsel, not only is to know the facts, but to guide his client. And I don't think this counsel did the right job. At least that's the way it looks to me right now. I understand your argument, however. Thank you. And we do. Go ahead. Yes, Your Honor. What did he say at the evidentiary hearing he would take or would not have taken? He said that he would have taken 10 years if. I'm sorry. He would or would not have taken? He would have taken 10 years if he, quote, had been told that the risk of going to trial was 262 to 327 months. Now, that was criminal history category 2. What was missing from the record is any representation by him that he would have taken the 10 years had he known he'd been in criminal history category 1. And the district court made the factual finding that, in fact, he was not interested in that 10-year sentence. Well, he was. In other words, his lawyer told him the wrong criminal history category. He was in 1 and the lawyer said he was in 2? Well, the lawyer testified that, in fact, he said he had questions as to whether he was in criminal history category 1 or 2, and he did not determine which category he was. He sure should have, don't you think? I think in an ideal world he certainly should have. Not in an ideal world. A competent criminal lawyer. There's no ideal world in this drug business anyway. Take my word for it. I think that he should have done that. And, in fact, I don't think the court needs to get to deficiency. We do disagree with the district court's rulings on the deficiency because Mr. Fersman testified that he knows he did tell Mr. Kong what the guideline range was, although he can't, sitting there testifying, specifically recall the date on which he did it. He knows he did. The only evidence contrary to that was Mr. Kong's own self-serving, of course, statement that Mr. Fersman did not advise him. But given that Mr. Kong was not credible in first saying that the first time he ever heard he faced a 20-year sentence was when the government moved for him to be remanded, because we know from the transcripts at the bail hearings he was advised that, in fact, he faced life sentences. So we know that that testimony is incorrect. And, moreover, the district court did find that he was untruthful regarding his willingness to have cooperated, or snitched, rather, and to take the plea. He was cooperative. That's okay. Well, cooperation under a 5K, of course, anticipates more than just snitching. It anticipates substantial assistance. And that is not required under the safety valve. But the safety valve statute does require that the defendant truthfully provide to the government all information and evidence that he has concerning offense or offenses that were part of the same course of conduct or common scheme or plan. And, of course, Thompson has held that this does include divulging your drug source. And Mr. Kong was adamant that that was not something at that time he would do. We don't really have to decide here what he would have done by the safety valve. Isn't there enough difference between the 10 years and what he would have gotten pre-Booker, which is when this came up, that we can examine? You know, putting the safety valve totally aside, whether he would have taken 10 years as opposed to whatever the danger of the 20th? I think that that would be enough if it was corroborated by anything. But the fact is that even Mr. Kong is not standing here, or rather at the evidentiary hearing, did not stand there and say that he would have taken that deal. So there's no evidence. Yes, because it was a ---- His attorney did not ask him that. He asked him, and I think that it was interesting that it wasn't asked, because there's been a lot of emphasis in the defendant's brief focusing on the difference in 120 months versus the criminal history Category 2 months, and what a big disparity that is. But, of course, had he been properly advised, he would have been advised that he faced 235 months to 293 months, which was under criminal history Category 1. And what was it again under 235 to 291? I don't know why we have to do this in months. I've had my calculator on my desk next to my computer for a few weeks. I keep doing that, too. I've been doing it for years. But what he testified to was criminal history Category 2, and that was 262 to 327 months. Roughly in years? I don't have my calculator here with me, but I think it's, let's see, 20. It's about 25 as opposed to 20, right? Yeah, I think that's about right, for the low end. He said, well, if I'd known it was 25 to something, I would have taken it, but he wasn't asked whether if he'd known it was 20 to something he would have taken it. He did not testify at all, so there was no evidence if it were 20. But the district court did make the factual finding, and this was Judge Roland M. White, made the factual finding that Mr. Kong would not have taken that 20-year sentence had he known. And so this court would have to find that that finding by Mr. I would have taken the 10-year sentence if he knew that the alternative was 20 to 25. Yeah, I think it's maybe 20 to 24. Again, I wish I had my calculator, but whatever the months are. So that's the finding that the district court made. Was there a reason that he thought he wouldn't have taken 20-10 rather than 20 to 24? Well, there were a few reasons. One is that one that I think is important that I haven't mentioned yet is the defendant was, in fact, proclaiming his innocence still, and even at the evidentiary hearing, he was asked the question by government counsel. But he knew he wasn't innocent. Excuse me? He knew he wasn't innocent. He may have been proclaiming it, but he knew that he wasn't. Well, what he testified to at the evidentiary hearing, the question posed by government counsel was, and this is at GER 47 and 48, so is it your testimony now that you believed prior to trial that you were not guilty, but you were still willing to accept an 87-month deal, and he said yes? Well, you know, that also takes in some, not necessarily the mental state of whether he did it, but whether there's a defense. But I'm interested, and I'm not sure I understand. What's your standard of review? The district court said there was no prejudice. Do we review it for abuse of discretion, currently erroneous, or de novo, or what? What's our standard? The court reviews the finding of no ineffective assistance de novo, but it reviews factual findings by the district court for clear error. So the court would have to ---- Next question. Well, the factual findings underlying the conclusion of no prejudice would be for clear error. And so this ---- Not for sure, but go ahead. That's fine. Okay. But the district court did find that the defendant would not have taken that 20-year deal, and this court would have to find that that finding was clearly erroneous. Well, I would have to find that was clearly erroneous. Isn't that a conclusion, not a factual finding? I don't ---- Do you think that the finding that he wouldn't have taken it is a factual finding? That he would not have taken it. And one of the reasons that the court found that he would not have taken it, first, is because Mr. Kong was unwilling to snitch, and also because ---- It has nothing to do with the 10 years. The 10 years is without the safety valve, isn't it? The 10 years would be without the safety valve. But what his testimony at the evidentiary hearing was, was just with regard to, I would take it if I knew I could get 87 months. So the only thing that Mr. Kong said at that evidentiary hearing about the 120 months was just that he would have taken that if he had been told he was criminal history Category 2. So the only evidence about if he had known the truth of him being criminal history Category 1 and what that guidelines range was, Mr. Kong's only testimony about that was that he would take it if he had known he could get 87 months. And the only way he could have gotten 87 months was if he had snitched. Do you know where this is in the excerpt of record? I have a whole bunch of sites down here. Which part would you like? Where he only testified that he would take it about the 87 months. He said, I believe that's at GER 43 is where he says the 10 years. I think it's the same. That's fine. That's close enough. What is our standard of review of the district court's determination of the facts of what he would or would not have accepted? Well, I think that to the extent that he's making a credibility determination of Mr. Kong, when Mr. Kong says I would have taken 87 months if I had known what my real guideline range was, that's a factual finding by the court of saying I find you not credible. And therefore, that is a clearly erroneous standard. Yeah. And the court said the court finds that Kong was willing to risk a 15-year sentence. It is unlikely that he would have accepted the plea agreement, even if he had been fully advised. Now, what we're saying here in an appellate capacity, and it seems to me you're right, that we have to determine that from the standpoint of being clearly erroneous. I think the credibility determinations by the court would be the factual findings that this court would have to find clearly erroneous. When the district court is making the conclusion of therefore there is no prejudice, that involves obviously questions of law, and that would be reviewed de novo by this court. Am I answering Your Honor's question? The problem I have, you know, for people to go back and decide what would be done as an afterthought, is really not a fact. It's just kind of a surmise and conjecture, maybe a conclusion. I don't know where it falls, but it's interesting. It is interesting, but the court shouldn't be considering what Mr. Kong would do now, now that he of course knows that after sentencing, even despite not having sought safety valve then, that he got 170 months. Well, now of course he would prefer to go back and try to get something else. I know that, but the thing that bothers me so much is the trial of a case, from all my experience, is pretty unusual with this one's facts and everybody squealing on everybody. I don't see how a competent counsel could not really advise his client, you're just not doing right unless you accept a plea. You'll do best that way. This lawyer, it seemed to me, was a little bit money hungry and wanted to go to put his client to trial. And the question of whether he would have taken it is really intermixed with the question of would he have taken it if he had gotten all the right advice. That's right. You can't really decide whether he would have taken it unless you first instruct him as to what, at that point, he should have known. Well, I don't think that's right, because that's why there are two separate prongs under Strickland, and that's why the court, the cases that have applied this even in a plea agreement context, apply, have even said that counsel can be deficient, but there may still be no prejudice. I understand that, but when you say to him would you have taken it, the question is would you have taken it if you had known that you were going to be convicted no matter what, instead of that you had a 50-50 chance. Well, I think the district courts certainly disagree that he was going to be convicted no matter what. Well, I'm giving you an example. Okay. I mean, in order to ask somebody would you have taken it, you have to tell them correctly. Your chances at trial would have been zero. Under those circumstances, would you have taken it? So that's where the deficient performance relates to the prejudice in more ways than the ordinary way. You know, would you have taken it then if you'd been told the alternatives are this? Well, it depends on what else you thought. It does. But here, I mean, obviously Your Honor knows that we have to put away the hindsight. Well, knowing that I was convicted, of course I would have taken it. Well, not knowing that I was convicted. Knowing that, the advice you should have had, you should have been proceeding on the assumption that you have a 1 percent chance of not being convicted instead of a 50-50 chance of not being convicted. In case this helps, this was a question that Your Honors had asked opposing counsel about the defenses at trial. And Mr. Fersman testified that his projection of the reasonable sentence was based on sentencing departures. But the defense at trial brought out through cross-examination was basically that Mr. Kong did not intend to distribute the methamphetamine. Yes, he had pleaded to possession, but that he did not intend to distribute it. And moreover, that he did not intend to achieve an objective of conspiracy. Not much of a defense when he didn't have any witnesses who said that. It was put through cross-examination of government witnesses. But that's where he was going with it. And, in fact, at the evidentiary hearing, Mr. Kong testified. Well, he testified contradictorily. First, he testified that he did not have any intent to distribute the methamphetamine found in his car. And then when questioned again, he said, well, I did intend to distribute it. So I think he's covering all of his bases. But I would ask the court to affirm the convictions and sentences on the prejudice grounds in this case. One thing in our conversations, we're talking about the judge having said the case was weak. I don't think the judge did. The court I'm looking at was that first he believed the government's evidence was weak. And that's so he's really saying that Kong thought the government's evidence was weak, not the judge did. The judge also did. He did? Yeah. Where? I don't know. I'll have to find it for you. I was looking to see if I had that cite at my fingertips. If the court has further questions for me, I'd be happy to answer them. Other than that, I'll submit. For me, I appreciate both arguments. Thank you. Thank you. Okay. Counsel, Roberto. Just in response to the last question, I think the court at page 11 of the excerpt said, this advice about the case presumably pertained to the conspiracy charge and was not unreasonable given the state of the evidence is what is in Judge White's decision, which is in our excerpts at page 11 regarding the evidence. My question is for you, can you tell us what your view of what your client said at the evidentiary hearing about whether he would have accepted, for whatever it's worth, what he said? Right. If he said he wouldn't, it's worth a lot. Sure. First of all, let me say that prior to the evidentiary hearing and prior to the sentencing, in a sentencing memorandum, the issues regarding the ineffective assistance of counsel during the plea negotiations were raised by new counsel as a basis for giving a lower sentence. We understood that it was not a downward departure for ineffective assistance of counsel during the plea, but we raised that issue. Mr. Kong's affidavit was submitted to the court prior to sentencing, saying to the court that he would have accepted the offer had it been transmitted to him properly, and that was done before sentencing and before the imposition of a 170-month sentence. So there was no waiting in the wings to see what the sentence was and then to see whether to do it or not. It was raised in the sentencing memorandum, affidavit from Mr. Fersman, affidavit from Mr. Kong, were submitted to the court prior to sentencing. After that was not accepted, we were prepared to proceed with the 2255 motion. It was filed that day. But it was the issues were already raised and addressed for the district court at sentencing, said he couldn't hear them in that context, and so there was no hedging bets about what the sentence would be. The PSR had recommended 235, 235 months. The government recommended it's sentencing 235 months. That was their sentencing recommendation. And only after new counsel came in did the PSR file a separate sentencing recommendation of 190 months to the district court judge prior to sentencing. So this was not a situation of Mr. Kong waiting in the wings, not trying to address this issue prior to sentencing. We attempted to do that, and there is record of that in the court. What Mr. Kong said throughout was that had he been properly advised, he would have entered a plea. He knew, and it was clear, that he may not meet the safety valve requirements. I mean, he may have proffered information to the government, and the government may have said and argued that this wasn't sufficient, and the district judge would have had to decide that. The offer was clearly ten years with the possibility of a safety valve. He knew that, and his testimony was he would have accepted it. Now, maybe at the evidentiary hearing there was discussion about what the advice was given, and Mr. Fersman, believing that he wasn't a criminal history I, said, well, I told him it was 235 months, when in fact it would have been 262. It's a 27-month difference. It's not a significant difference. It's 20 years as opposed to almost 22 years, or a little over 22 years. So that's not the big difference. The big difference is ten years to the 20 years, to the 22 years. And Mr. Kong said, I would have done that. He said that in affidavit prior to sentencing, that I would have accepted it had I been properly advised about the case. Now, in regards to the judge's finding that it was unlikely he would have accepted the plea bargain, two things, number one, that is the ultimate question. Is there a reasonable probability that he would have accepted the plea bargain? That's the ultimate question that's mixed law and fact. And you have to look at what facts the judge looked at, and the district court did that, and you review that de novo. You review the ultimate question de novo. So in this case, the district judge, I think, blamed Mr. Kong for believing that the evidence was weak, and that's not his fault. That was Mr. Fersman's fault. And, you know, shown no interest in a ten-year settlement, it he was he sure he was not he wanted he wanted less, but had he been properly. The key thing is whether Kong thought it was weak, not whether the judge thought it was weak. Right, right. But Kong's belief that it was weak, if it was weak, was based on his advice from Mr. Fersman, which was incorrect. And that is the mixture. And so to go back and say, and I think that's why you have to look at all this de novo, is to say, wait a minute, you put Mr. Kong back in that position where he's given wrong advice about his chances at trial, wrong advice about what his sentence could have been, and then you say, oh, no. Then you have to look at that and say, is there a reasonable probability that he would have taken it had he known that? And I think the answer is clearly yes. Well, it's a difficult decision, and I understand that. Courts have looked at objective factors, not just the statements of the defendant. I think in this case, you have the statement of the defendant prior to sentencing that he would have taken it, not knowing what the sentence was going to be. It's an affidavit. It's an affidavit saying I would have taken the deal. So it's not that self-serving afterwards, as the government would ask you to believe. The second thing is that you look at, and I think it's the Gordon case out of the Second Circuit, that looks at the disparity in the sentences as an objective factor. And so here you have to look at it and say, put yourselves in the position of a person who is facing these charges. If he's told you have very little chance or no chance of winning this case, you're going to get, most likely you will get a 20-year sentence or plus 20-year sentence. The judge gave 170 months concurrent on both counts. So when you ask about what the sentence might be on the non-conspiracy charge, the possession with intent to deliver a loan, that's a 170-month sentence that he's been given. So, but then you have to ask, is there a reasonable probability? And not a definiteness, not a more likely than not. And what the judge decided was the district court said it's unlikely he would have accepted the plea. Not that it's not reasonably probable, but it's unlikely given those things. And that, I think, is not accurate when you go back and put all of the information together that the defendant should have been confronted with prior to the trial in this case. Unless there are additional questions. I mean, I think in the records show that Mr. Kahn said he would accept that. Thank you very much. Case just argued will be submitted. The court will stand on recess for the day.
judges: Hug, Reinhardt, Bright